J. H. FREEMAN, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 2, 1902.

1. Passenger Carriers: DEGREE OF CARE: INSTRUCTION. An instruction holding a passenger carrier guilty of negligence unless he exercised the utmost human skill, diligence and foresight to prevent the accident, is error.

2. Evidence: INSTRUCTIONS: ABSENT WITNESS. An instruction relating to the evidence of an absent witness, which in effect told the jury that the absent witness had made contradictory statements, is condemned.

3. ———: ———: ———: An instruction set out in the opinion and relating to the testimony of an absent witness, is held to be at least of doubtful propriety and should not be given.

4. **Damages:** HUSBAND, AND WIFE: SOCIETY: INSTRUCTION: ASSUMING FACT. An instruction relating to damages for the loss of a wife's society should not assume facts in dispute on the evidence.

5. ———: LOSS OF TIME: NURSE: SUGGESTIONS. Among other hints for a new trial it is suggested that a husband who nurses his wife is entitled to recover the reasonable value of his time as a nurse without regard to his ability for earnings in any other capacity.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

REVERSED AND REMANDED.

*Arthur F. Smith, John H. Lucas* and *Frank Hagerman* for appellant.

(1) The court erred in giving plaintiff's instruction 4. It was a clear comment upon the testimony. Anderson v. Kincheloe, 30 Mo. 525; Fine v. Public Schools, 39 Mo. 68; Jones v. Jones, 57 Mo. 143; Forrester v. Moore, 77 Mo. 660; Benjamin v. Railroad, 50 Mo. App. 612; Barr v. Kansas City, 105 Mo. 559; Blair v. Railroad, 31 Mo. App. 231; Pryor v. Railroad, 85 Mo. App. 380; Spohn v. Railroad, 87 Mo. 74; Lynch v. Railroad, 112 Mo. 433; Weller v. Railroad, 120 Mo. 654. It authorized the jury to consider contradictory statements made by the conductor when there was no proof thereof. (2) There was error in giving plaintiff's instruction 1. It required too high a degree of care (Feary v. Railroad, 162 Mo. 104) and conflicted with defendant's instruction 2 and modified instruction 1. Conflicting instructions are always erroneous. Frederick v. Allgaier, 88 Mo. 603; State v. McNally, 87 Mo. 658; State v. Simms, 68 Mo. 310; Simmons v. Carrier, 60 Mo. 585; Henschen v. O'Bannon, 56 Mo. 292; Thomas v. Babb, 45 Mo. 388; Goetz v. Railroad, 50 Mo. 474. (3) The court erred in giving plaintiff's instruction 2. It assumed that plaintiff's wife was healthy and strong, that her society, health, strength

and usefulness were impaired, and that this impairment was the result of defendant's negligence. Fullerton v. Fordyce, 121 Mo. 13; Turner v. Loler, 34 Mo. 461; Moffatt v. Conklin, 35 Mo. 457; Peck v. Ritchey, 66 Mo. 121; Comer v. Taylor, 82 Mo. 348; Wilkerson v. Thompson, 82 Mo. 328; State v. Hecox, 83 Mo. 538; Maxwell v. Railroad, 85 Mo. 105; Matthews v. Railroad, 26 Mo. App. 91; State v. Taylor, 111 Mo. 541; Patterson v. Railroad, 47 Mo. App. 570. (4) The court erred in giving plaintiff's instruction 3 for the reason that it improperly assumes facts. Cases cited in point 3, supra.

*J. H. McVay* for respondent.

(1) Instruction four, first complained of by appellant, was not a comment on the testimony. It simply stated the law and did not mention one syllable of the testimony. Clark v. Gordry, 69 Mo. App. 6; Tyler v. Hall, 106 Mo. 323; Dunn v. Henley, 24 Mo. App. 579; State v. Munson, 76 Mo. 109; Rose v. Spies, 44 Mo. 20; State v. Marshall, 137 Mo. 463; Fullerton v. Fordyce, 144 Mo. 519; Baker v. Railroad, 147 Mo. 140; R. S. 1899, sec. 687. (2) The first instruction given by the court did not require too high a degree of care. `Furnish v. Railroad, 102 Mo. 438, and cases therein cited; Leslie v. Railroad, 88 Mo. 50; Jones v. Railroad, 31 Mo. App. 614; Smith v. Railroad, 108 Mo. 243; Powers v. Railroad, 60 Mo. App. 481. There was no conflict between this instruction and the one given for defendant on the same point. (3) Instruction two, given for the plaintiff, is not vulnerable to the objection urged by the defendant, that it assumed that plaintiff's wife was healthy and strong, and that her society, health, strength and usefulness were impaired, and that this impairment was the result of defendant's negligence. Instruction two states the law. Brown v. Railroad, 31 Mo. App. 661 and cases therein cited; Van

Nata v. Railroad, 133 Mo. 13; McGuire v. Railroad, 43 Mo. App. 354; Bentley v. Vette, 61 Mo. App. 281; Taylor v. Scherpe & Cohen Iron Co., 133 Mo. 349; Fields v. Railroad, 80 Mo. 203; Pope v. Railroad, 99 Mo. 400; Brown v. Emerson, 66 Mo. App. 63; Robinson v. Estes, 53 Mo. App. 582; Blackman v. Cowen, 11 Mo. App. 589; Klutts v. Railroad, 75 Mo. 642; Young v. Webb City, 150 Mo. 333. (4) In its instruction on the measure of damages, the court should, as far as possible, point out what are and what are not elements of damage appropriate for the jury to consider, and thus keep them within the bounds of legitimate inquiry. Young v. Webb City, 150 Mo. 333; Schaub v. Railroad, 106 Mo. 74; Chilton v. St. Joseph, 143 Mo. 192; Goss v. Railroad, 50 Mo. App. 614; Chartrand v. Railroad, 57 Mo. App. 425; Haniford v. Kansas City, 103 Mo. 172; Rosenkrantz v. Railroad, 108 Mo. 9; Bigelow v. Railroad, 48 Mo. App. 367; Russell v. Inhabitants of Columbia, 74 Mo. 480. (5) The judgment is for the right party and should be sustained. Hall v. Goodnight, 138 Mo. 576; State v. Branch, 151 Mo. 622; Doyle v. Trust Co., 140 Mo. 1; Town of Hurdland v. Hardy, 74 Mo. App. 614; Barkley v. Barkley Cemetery Assn., 153 Mo. 300; Langston v. Railroad, 147 Mo. 457; Baustian v. Young, 152 Mo. 317; Fields v. Railroad, 80 Mo. App. 603; Fugate v. Miller, 109 Mo. 291; Fitzgerald v. Barker, 96 Mo. 661; Henry v. Railroad, 113 Mo. 525.

BROADDUS, J.—The plaintiff sues as the husband of Mary Freeman, who is alleged to have been injured by the negligence of defendant while she was a passenger on one of its cable cars, on the eighteenth day of July, 1900. The injury complained of occurred at the crossing of defendant's cable tracks at Twelfth street and Troost avenue in Kansas City, Missouri. It is claimed by plaintiff that his wife's injuries were occasioned by a sudden stop of the train, upon which she

was a passenger, which was caused by "the unskillful, careless and negligent management of said car and its equipment, by the defendant," and "by reason of the equipments of the track, negligently and carelessly being allowed by said defendant to become and remain out of repair."

A cable car, it is conceded, is propelled by a cable rope running in a conduit below the surface of the street; a grip-shank fastened to the car runs along through a narrow slot extending under the ground, where it grasps the moving rope, and thus power is given to move the train, the gripping and releasing of the rope being done by a lever which loosens or tightens the jaws of the grip-shank upon the rope. At cable crossings, of necessity, one rope must pass under another, and it is necessary to throw the rope entirely out of the grip upon this line so as to permit the cable to be depressed and the lever to go above the other cable, thus letting the car, by its own momentum, pass over without obstruction.

Where the accident in question occurred, the Twelfth street cable line had the lower cable, and in order to make the crossing from east to west, as the car in question was going, the gripman would give the car momentum to carry it over Troost avenue, open his grip at a certain point, when some appliance, called the "let go" removes the rope from the grip, and the rope is again caught after the crossing is made. For the protection of the Troost avenue cable, there is placed in the conduit a block of wood called the "dead man." Plaintiff claimed that the accident in question was caused by the failure of the gripman to let go of the rope at Troost avenue, while the defendant claimed there was some little obstruction unnoticeable in its nature, that got in the slot which caused the same to be blocked so as to suddenly stop the car. In addition, the plaintiff further claimed that even if the train did strike some obstruction in the slot, the defendant was

guilty of negligence in the management of its car which was the cause of it.

The evidence in the case was somewhat conflicting. There was testimony tending to show that the gripman in charge of the train, when he arrived at the crossing of the two cables, did not throw his cable so as to release his grip, but that he stood in his position without taking any action until he was thrown from it by the force of the collision. The evidence of the defendant tended to show that there was no defect in the appliances of the train, nor that the car or track was out of repair, but that the accident was caused by the grip running through the slot striking some obstruction, which from its nature was unnoticeable by the operators of the train. The cause was submitted to a jury upon the evidence and instructions of the court. The finding and judgment were for the plaintiff in the sum of $1,000, from which defendant appealed.

There are many grounds alleged why the cause should be reversed. In plaintiff's first instruction the jury were told that if "the said accident could have been prevented by the exercise of the *utmost human skill, diligence and foresight* on the part of the defendant's" agents and employees, the jury were instructed to find for the plaintiff. It is contended that this was requiring too high a degree of care, and was in conflict with defendant's instruction number two, which was to the effect, that the defendant "was not bound to use more care than was reasonably practicable."

In Furnish v. Railroad, 102 Mo. 438, the court, in discussing the question, said: "The care required of a railroad towards its passengers may also be defined as the highest practicable care, caution and diligence which capable and faithful railroad men would exercise under similar circumstances." Judge BARCLAY, who delivered the opinion of the court, in commenting on the instructions in that case, said: "Throughout the instructions it is asserted that the duty, owing by a

steam railway carrier to its passengers, is to furnish reasonably safe and sufficient roadbed, track, cars and engine, so far as human skill, diligence and foresight could provide,'' and that defendant ''is responsible for all injuries from slight negligence on its part.'' In another part of the opinion the import of the words, ''utmost human skill, diligence and foresight,'' as used by the court, is explained to be ''such skill, diligence and foresight as is exercised by a very cautious person under like circumstances.'' This is substantially and almost literally the same language as is approved by the text-writers of high authority in summarizing the law deducible from all the precedents. It will be seen that the words ''utmost human skill and foresight'' were held to be proper with the explanation that the meaning was ''such skill, diligence and foresight as is exercised by a very cautious person under like circumstances.'' Said case is not, therefore, to be considered as an unqualified authority, if authority at all, to support plaintiff's instruction, objected to by defendant.

In the recent case of Feary v. Railroad, 162 Mo. 75, the following instruction given therein was approved by the court, to-wit: ''If defendant's servants and employees exercised all the care and foresight that was reasonably practicable, then there is no negligence, and in determining any issue as to negligence on defendant's part submitted to you in these instructions, you are instructed that if there was exercised all the care that was reasonably practicable, then there was no negligence.'' The defendant in that case had recovered, and it was one of plaintiff's assignments of error, that said instruction was not the law of the case. Judge MARSHALL, who delivered the opinion of the court, after citing Sullivan v. Railroad, 133 Mo. 1; Dougherty v. Railroad, 97 Mo. 647; Gilson v. Railroad, 76 Mo. 282; Smith v. Railroad, 118 Mo. 199, uses the following language.'' The instruction under consideration requires all the care and foresight that was rea-

sonably practicable. The law requires nothing that is unreasonable. If a carrier exercises the care so required, there will be no injuries except in cases of inevitable or unavoidable accident. The instruction is as broad as the liability of the carrier should be made.''

Attention is also called to the fact that in Dougherty v. Railroad, supra, the cause was reversed because of an instruction requiring of the defendant carrier to use, ''the utmost human foresight, knowledge, skill and care'' to prevent accidents. In speaking of said instruction Judge RAY, who delivered the opinion, said: ''It is true that instruction number three seems to have been often approved by this court and courts elsewhere, but as often, the courts have felt and recognized the propriety, if not the necessity, of explaining and construing the same. Number three seems to state the abstract proposition too broadly as to the degree of care incumbent on the defendant.'' In Gilson v. Railroad, supra, the court held that an instruction was erroneous that told the jury, ''a carrier was liable for an injury to a passenger from a defect in his vehicle, unless he had used the greatest possible care and diligence that was necessary.'' In Schaffer v. Railroad, an instruction was asked and refused to the effect that the burden was ''upon the defendant to show to the satisfaction of the jury that its employees managing the car exercised the utmost human care in its management.'' The court held that the action of the trial court in refusing said instruction was proper.

This short and imperfect history shows that our courts have been holding adversely on the question at issue. But it is clear from what has been said that, notwithstanding the inconsistent holdings of the Supreme Court of the State as to the degree of care required of a carrier towards its passengers, there can be no question of the status of the question at the present time. It therefore follows that plaintiff's instruction requiring of the defendant ''the exercise of the

utmost human skill, diligence and foresight,'' was error, and should not have been given to the jury.

It is also contended that plaintiff's instruction number four is subject to the objection that it is a commentary on the evidence.    It reads:    ''The court instructs the jury that the plaintiff admits that one F. R. Kautz and George Byrne, if present on the witness stand, would swear to certain matters set out in an affidavit made in support of an application for continuance filed in the case by the defendant.    You are further instructed that by such admission on the part of the plaintiff he does not admit the truth of such statements, but he may disprove the matters disclosed in said statements or prove any contradictory statements made by such absent witnesses in relation to the matters in issue and on trial.    It is for you to say what weight you will attach to any and all testimony introduced in the trial of this cause.''    Section 687, Revised Statutes 1899, under which such evidence is authorized, among other things, provides that ''the opposite party may disprove the facts disclosed or prove any contradictory statements made by such absent witness in relation to the matter in issue and on trial.''    The vice of the said instruction is plain—it tells the jury that the plaintiff may ''disprove the matters disclosed in said statements, *or disprove any contradictory statements made by such absent witnesses in relation to the matters in issue and on trial.''*    The court thus, in effect, told the jury that said absent witnesses had made *contradictory statements.*

We are further of the opinion that said instruction is of doubtful propriety in any case, taking it as a whole.    The purpose of the statute was to prevent delay and afford to parties litigant a speedy trial.    But we do not think it can be seriously contended that it was the intention of the Legislature to place such evidence on a different footing from the evidence of other witnesses.    When once admitted it should be subject

to the same rules and considered like the evidence of any other witness. Like the evidence of a witness included in a deposition, or in an agreed written statement of the parties, which is sometimes resorted to on account of the unavoidable absence of a witness. The evidence of an absent witness is not very forceful at best, on account of the absence of the person testifying. This fact is appreciated by the trial judges and the legal profession generally, and it is often felt that great injustice is done by forcing a party to go to trial under such circumstances, for the personality of the witness, if present, might have the effect of turning the scales of justice. And to further weaken the force of the evidence of such absent witness in permitting the court to specially comment on his evidence, practically destroys its usefulness altogether. We do not think such an instruction should be given.

The defendant objected to instruction number two, given for plaintiff, which is as follows: ''The court instructs the jury that the husband is entitled to the society, health, strength and usefulness of the wife, unimpaired by injury as the result of the negligence of another, and that the law does not furnish us any exact standard by which to measure the value of the wife's society; therefore, in the case now on trial, the matter of the value of the society of Mrs. Freeman to her husband, the plaintiff, must be left to the enlightened judgment of the jury. By the term 'society', as is here used, is meant the capacity for usefulness, aid and comfort as the wife possessed at the time of the injury.'' The objection is that the instruction ''assumed that plaintiff's wife was healthy and strong, that her society, health, strength and usefulness were impaired, and that this impairment was the result of defendant's negligence.'' In Young v. Webb City, 150 Mo. 333, a similar instruction was held not to be subject to a similar objection. There are other cases to the same effect. But instructions of this character

are only applicable where the injury complained of is not in dispute. In Fuller v. Fordyce, 121 Mo. 1, it was held that where the evidence as to the injury is conflicting, such an instruction assumes that as true which is in dispute, and is therefore improper. Dr. Jackson, the medical expert who made an examination of plaintiff—being appointed by the court for the purpose—testified on the trial that he could not find anything the matter with the plaintiff except that she was nervously affected, which he accounted for as having been brought about by suggestion. This evidence created a conflict on the question of plaintiff's injury.

We would suggest that, when the case is retried, the objection to the instruction in question be obviated by one appropriate to the facts. The same objection also applies to instruction number three, to which there is the additional objection that the same authorized the plaintiff to recover compensation from defendant "for loss of his own time in nursing and care of the injured wife." Said instruction should have been framed so as to authorize plaintiff to recover for the *reasonable value* of his time as a nurse, without regard to his ability for earnings in any other capacity.

It is insisted by the respondent that notwithstanding there may have been errors in the trial, yet, as the verdict and judgment were for the right party, the cause ought to be affirmed. But some of the errors pointed out are of such importance that we do not know what would have been the result had the law, as we hold, been followed. It might have been different. The cause is reversed and remanded. All concur.