DANIEL W. BALDWIN, RESPONDENT, v. KANSAS CITY PUBLIC SERVICE COMPANY, APPELLANT.—210 S. W. 2d 115.

Kansas City Court of Appeals.  Opinion delivered March 1, 1948.

*Charles L. Carr, R. Carter Tucker, John Murphy, William H. Wilson* and *Tucker, Murphy & Wilson* for appellant.

*P. L. Edwards* for respondent.

SPERRY, C.—This is a suit for damages, instituted by Daniel W. Baldwin, plaintiff, against the Kansas City Public Service Company, defendant, for personal injuries sustained by plaintiff in a collision between his automobile and defendant's trolley bus. Plaintiff had a verdict and judgment in the amount of $1200 from which judgment defendant appeals.

There was evidence to the effect that plaintiff was driving his automobile westward along 15th Street, at a reasonable speed; that, as he neared the intersection of 15th and Holmes Street, he brought his car to a stop, with the left side thereof two or three feet north of the center line of 15th; that he gave a lefthand signal, started his car in motion and turned to the left, intending to enter the east of two driveways of a filling station located on the southeast corner of that intersection; that as he began the turn plaintiff observed defendant's trolley bus coming east, at a point from 150 to 200 feet west, on the south side of 15th, with its right side about 12 feet from the south curb line of 15th; that the automobile proceeded, from the time the turn was commenced until the collision occurred, at a speed of from 2 to 4 miles per hour; that visibility was excellent and the street was dry; that the trolley bus approached at a speed of from 20 to 22 miles per hour; that the automobile could have been brought to a stop, after beginning the turn, within 2 feet; that the bus, traveling at 22 miles per hour, could have been brought to an emergency stop within 32 feet; (defendant's expert testimony was to the effect that the bus could have been stopped within 42 feet

while traveling at 22 miles per hour); that the bus did not swerve (although many witnesses for defendant testified that it did swerve to the right after a sharp application of the brakes); that the front part of the bus struck the automobile at about the middle, on the right side, when its front wheels were 2 feet north of the south curb line of 15th, at the driveway.

There was evidence to the effect that defendant's operator saw plaintiff's car when it began to make the turn; that 15th Street is 75 feet wide, from curb to curb; that the bus is 8 feet 4 inches wide; and that the automobile was about 14 feet in length.

The cause was submitted on the issue of humanitarian negligence. Defendant contends that plaintiff failed to make a submissible case on that theory.

From the above facts the jury could have believed that the automobile traveled a distance of about 37 feet from the time the turn was commenced until the collision occurred; that the bus was traveling 5 times as fast as was the automobile, and that, therefore, the bus was 185 feet west of the automobile when the turn began; that the automobile traveled about 25 feet from the time the turn began until it reached a point where it would have been impossible for plaintiff to have stopped without being in the path of the bus; that defendant's operator could have seen plaintiff in such position of imminent and inextricable peril at a time when the bus was a distance of 60 feet west of the point of impact; and that, had said operator then applied the brakes for an emergency stop, the bus could have been stopped in time to have avoided striking plaintiff's automobile, and with safety to the bus and passengers.

We are aware that there was substantial evidence, offered by defendant which, if it had been believed by the jury, would have supported a judgment for defendant; but we cannot consider such evidence since the verdict was for plaintiff, there being substantial evidence tending to support it.

The court gave to the jury plaintiff's main instruction No. 1, which is as follows:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff was driving an automobile westerly on 15th Street and that when he reached a point east of the intersection of 15th Street and Holmes Street, *he started turning the car which he was driving to his left and toward the south and if you find that after he started turning south that he was, or later became, in a position of imminent and inescapable peril from the approach* of the bus operated by defendant, Kansas City Public Service Company, if you so find, and that the driver of said bus saw or by the exercise of ordinary care would have seen the position of plaintiff *and have known all the above facts,* if you so find them to be

the facts, in time thereafter, by the use of ordinary care and the means at hand and with safety to his bus and its occupants and others, to have stopped said bus or slackened its speed or have changed its course and thereby have prevented said collision and plaintiff being injured, if so, and that he failed to use ordinary care so to do and was thereby negligent, if you so find, and that as a direct result thereof said collision occurred and plaintiff was thereby injured, if you so find, then your verdict on plaintiff's claim for damages against the defendant must be for plaintiff and against defendant, and this is the law and is true even though you should believe that plaintiff was himself negligent in getting into and being in the aforesaid position of peril and danger, if he was, on said occasion.'' (Emphasis ours.)

Defendant says that the court erred in giving said instruction for the reason that ''It unduly extended and broadened the danger zone, and thereby placed upon defendant's operator an alleged duty to act long before the plaintiff was or could have been in a position of imminent and inescapable peril.'' It is contended that, under the instruction, defendant's operator was required to act when plaintiff began making the turn, at which time he was at least 20 feet north of the path of the bus which, at that time, was from 150 to 200 feet west of the automobile. If defendant's construction of the instruction is correct it is reversibly erroneous. Smithers v Barker, 111 S. W. 2d, 47; Roach v Kansas City Public Service Company, 141 S. W. 2d, 800, 1. c. 802. Plaintiff, by his own testimony, was not oblivious of the approach of the bus, and the case was not submitted on such theory; Gosney v May Lumber & Coal Company, 179 S. W. 2d, 51, 1. c. 52, 53; and it is obliviousness which widens the zone of imminent peril. Melenson v Howell, 130 S. W. 2d, 555, 1. c. 560.

Plaintiff contends that a similar instruction, identically like the one before us on the point here considered, was approved in Melenson v Howell, supra, 1. c. 559.

A comparison of the two instructions reveals that thay are virtually identical in wording, with the exception that, in the instruction before us the words: ''* * * or later became,'' appear, whereas they do not appear in the Melenson instruction. The opinion in the Melenson case, and in the case of Smithers v. Barker, supra, was written by the same author. He distinguishes the language used in the two instructions. It is pointed out that ''after she started turning west'' did not authorize a verdict for plaintiff on the theory that she was in imminent peril, ''while'' or ''when'' she was turning west, but only ''after plaintiff started turning west.''

The instruction in the instant case contains the additional words: ''or later became'' which, defendant contends, places a greater duty on its operator than is required of him by law. It is doubtful if

these additional words materially affected the *technical* meaning of the instruction but they did tend to emphasize and direct the attention of the jury to the "turning." The act of turning had been completed long before plaintiff came into or was in a position of peril. These words did not tend to clarify the preceding portion of the instruction but probably tended to obscure such meaning.

Furthermore, the facts in the Melenson case are quite different from the facts in this case. In that case plaintiff was driving south on one set of street car tracks and defendant was driving north on the parallel set of tracks. After plaintiff turned her automobile left, to the east, she was, immediately thereafter, within the path of defendant's automobile, and in imminent peril of being struck. The time that would elapse between the instant of turning and the arrival of her car at the point where she could not stop before being directly· in defendant's path was so short as to be almost negligible. These facts are discussed in the course of the opinion in the Melenson case.

Considering the *facts* in this case, from a standpoint favorable to plaintiff's right of recovery on the humanitarian theory, the instruction, if technically correct was, nevertheless, confusing and misleading to the jury. The use of the words "or later became" might have led the jury to believe that the court meant that *if* plaintiff was not in a position of imminent peril *when he began* turning it might find that he came into such peril *later*. Technically, the jury might have given the instruction such a construction because, otherwise, "or *later* became***" has no significance whatever and was and is entirely surplusage. If it was intended to clarify the phrase "after he started turning" it fails in such purpose. It does have the effect, however of emphasizing the "turning," and other facts preceding the collision. We must bear in mind that while the Supreme Court, in the Melenson case, approved an instruction virtually identical with the instruction here considered except that it did not contain the words "or later became" the facts in evidence were different. Considering the vital difference between the two sets of facts, we think the difference in wording, as pointed out, might have confused and misled the jury as to when and where defendant's operator should have acted, although had the same words been used in the Melenson instruction the instruction might not be reversibly erroneous. In the case at bar plaintiff was in no danger until long after turning whereas, in the Melenson case plaintiff was in danger immediately after turning. In truth, she probably was in danger before she had completed the act of turning. We are considering the instruction given in this case, and not the one in the Melenson case, for they are not identical; and we are considering the instruction as given, in relation to the facts as developed in this case, not in relation to the facts developed in the Melenson case, for

the facts in the two cases are materially different. We hold that the instruction, as given, considering the facts in evidence, was confusing and misleading, and is reversibly erroneous, even though it may be technically correct. Freeman v Berberich, 60 S. W. 2d, 393, l. c. 395, Millhouser v Kansas City Public Service Company, 55 S. W. 2d, 673. Courts and lawyers find some diffculty in properly applying the humanitarian theory and surely laymen may be more easily confused by the wording of instructions than are members of the profession. It is the duty of the courts to require instructions that clarify, rather than confuse, on this difficult doctrine.

Plaintiff cites and relies on the case of Spoeneman v Uhrin, 332 Mo. 821. We find but little in that case that is of aid in the disposition of the question here presented for decision.

Plaintiff points to the fact that he did not enter the danger zone suddenly "but that plaintiff slowly made his turn with his arm signalling***." Since obliviousness of danger was neither proved nor submitted the manner in which plaintiff got into a position of imminent and inextricable peril is not material. The operator is not charged with having failed to see, if he did fail to see, plaintiff's slow and steady approach. If he had been oblivious of the approach of the bus it is conceivable that such obliviousness might have justified an instruction materially different from that required in the case tried and submitted. The very fact that plaintiff advances this thought raises a query as to whether or not the instruction was so drawn as to subtly direct the minds of the jury to plaintiff from the time when he turned until the time when he reached a position of peril. The fact that it is calculated to have that effect is what induces our holding that error was committed.

The judgment should be reversed and the cause remanded. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded. All concur.